Good morning, and may it please the Court, Brian Hecken-Lively from Munger, Tolles and Olson appearing as amicus curiae appointed by the Court to represent petitioner's interests in this case. Excuse me just a second. We have a little bit of a problem with the microphone. We're getting some feedback. So if you can speak up like there's no microphone so the person in the back can hear you, it'll come out just about right. My pleasure, Your Honor. Let me start over. I'm Brian Hecken-Lively from Munger, Tolles and Olson. I'm appearing as amicus, the beneficiary of the Court's pro bono program today on behalf and in support of the petitioner. I'd like to reserve two minutes of my time for rebuttal. There are three independent but factually related reasons why a remand is appropriate in this case. And I want to focus on the facts, but before I do that, I'd like to preview the three arguments, and we make all three of these arguments in our briefs. The first argument is that the immigration judge denied petitioner due process by failing to develop the record of the hearing. The second argument is that the BIA erred in deciding that the petitioner had abandoned his political opinion persecution claim before the immigration judge. And the third argument, which is closely related, is that the BIA failed to provide a reasoned explanation for its conclusion that there had been abandonment before the IJ of that claim. So let me get into the facts that tie all three of those arguments together. In 1993, the petitioner, Mr. Maldonado Diaz, voluntarily filed an application for asylum, an I-589. In that I-589, he stated, among other things, that a guerrilla group had risen to power in his hometown in Guatemala, that that group had attempted to force him and others to attend political meetings in the town, and that he had openly refused to attend those meetings because he disagreed with the guerrillas' political views. Now, he testified in the I-589 that as a result of that, that he was threatened with his life and that he was sought out at home on several occasions. That was all in the I-589. And he checked the box for political opinion persecution, one of the statutory grounds. The IJ — There was some other material in it, some of which was crossed out at the time of the hearing. That's a good question, Judge Berzon. And the pieces of testimony that I just referenced were not crossed out at the hearing. Right. In fact, the hearing began with Mr. Maldonado Diaz's attorney asking the immigration judge to cross out other pieces of the I-589 about membership in a political party, an alternate route to the same conclusion about political opinion persecution. But she didn't ask him — she didn't ask the judge to cross out the box that had been checked. She didn't ask the judge to cross out the facts about the meetings or the threats or the visits to his home or the fact that that was all because he disagreed with their political views. That was all still in the record before the IJ. Now, the BIA realized that that had been in the record. The BIA realized that the IJ had overlooked it. And the BIA said in the I-589 there's evidence of a political persecution claim. But it said the petitioner had abandoned that claim at the hearing before the IJ. So that brings me to my legal arguments. And the first one of those arguments is why the BIA was incorrect in reaching that conclusion. Now, it's not clear what the standard of review is here, Your Honor. If it's substantial evidence review, a remand is appropriate because there's no evidence at all supporting that conclusion. If, as I think is appropriate, it's de novo review because the conclusion of abandonment is a legal conclusion by the BOA, by regulation the BIA cannot make factual determinations that were not made by the immigration judge below, and abandonment is itself a legal conclusion, then de novo review is appropriate. Either way, the facts in the I-589, which were part of the record, entered into evidence by the judge at the IJ hearing, that was all in the record. And it facially supported a claim for asylum based on political opinion persecution. I direct the Court's attention specifically to pages 89, 90, and 92 of the administrative record, which are pieces of the I-589 where that claim is spelled out, and all the facts that I talked about in my opening remarks are laid out very clearly and were not crossed out. There has to be a purpose that your client's able to demonstrate that indicates that any type of suffering that occurred to her was a result of a protected group, that a person whose gangs go around doesn't get the job done. And where's the evidence that there was, that this was caused by an understanding of that of a protected group that your client assumes or claims? Yes, Your Honor. That's a fair question. And to be clear, the evidence is that this was at the hands of the ORPA guerrilla group, a leftist group that this Court has addressed in several. Didn't the application say it was because we didn't, we politically disagreed with them? Yes, it does, Your Honor. I'm happy to, as I said, it's on pages 89, 90, and 92 of the administrative record. Part of this that bothers me or that I'm curious about is how, what happened here was he made these allegations, he signed them under penalty of perjury, and he gave no testimony at all about them.  That's correct, Your Honor. The government presumably had the right to test what he was saying, but he essentially didn't give them the opportunity because he didn't say it. So they should have what? They should have said, you say in your application X and explain it? Or how should the government have gotten its opportunity to cross-examine him and have him spell out? Because it's, I mean, what's in the application is not in any particular detail. And if it was all he had said, I don't know whether it would have been adequate. Perhaps it would have been. But it's never engaged because he never says it physically when he's testifying. Your Honor, this Court has made clear, first of all, in Grava and in other cases, that the I-589, if it's in the record, is part of the petitioner's testimony. It's evidence just like anything else that he says. And respectfully, I disagree that the I-589 isn't clear here. I mean, he says specifically that he says, in refusing we have exposed our lives to the point that threats to each and every one of us. Well, if he had testified to it, and perhaps otherwise, because you say there is case law saying that this is evidence. So perhaps what the government should have done is said, you said in your application X, what were the threats? Where did it happen? How many meetings were there? How do you know that? I mean, all the things that they would have said if he had actually testified. That's right, Your Honor. And, in fact, this Court has said that the petitioner doesn't even need to testify. The I-589, he can stand on the I-589 if he wants to. Petitioner here shouldn't be penalized because he also testified, and the government had the opportunity to examine him, but simply decided not to ask this question. That's an issue, of course, that you're asserting, but who has the burden of proof? It's the petitioner. The government doesn't have to do anything. The petitioner has to do something, has to prove to the satisfaction of the IJ. So what is the evidence that the petitioner has that would show that the IJ was clearly wrong in the assessment that there was no protected group involved? Well, to be clear, Your Honor, the IJ didn't make that assessment on this particular claim involving the political opinion persecution. And this Court has specifically held in the cases Lopez and Rios that we cite at page 14 of our brief, Lopez involves this exact same guerrilla group, and the Court has held that persecution by those groups in particular, and including the ORPA group, is a protected ground under the statute. Certainly, if there's some evidence that that's the reason for the – but where in the record is the reason shown that they could say that that's why it's happening? If they – if he gets robbed, there's no – even though they're bad people, that's not a protected ground. Your Honor, I'm glad you asked that, because I want to be clear that I'm not talking about the robberies that were the focus of the IJ's petition. I'm talking about evidence that was not explored at the hearing before the IJ, but that's not the case.   I'm talking about evidence that is not in the administrative record. And that's the – So you're – you're – the only thing that you're going to rely on that the burden of proof has been met is the record itself, nothing that happened in the trial. Your Honor, that's correct that I'm relying on the record itself, but I'm not – My understanding is you're not even saying that the burden of proof was met. There's 89 and 90 of the administrative record where he talks about the fact that his refusal to attend the meetings was because of his disagreement with political views and that the threats were the result of that disagreement. That should have been considered, and it wasn't. And the BIA erred to conclude that he had abandoned it. The BIA failed to provide a reasoned explanation for why it concluded it had been abandoned. And the IJ, for her part, fell short of her duty as a matter of due process to explore the testimony in the I-589 that's clearly set – was clearly before her at the hearing. Was your client represented by a lawyer? The BIA affirmed – it's my understanding that the BIA affirmed the IJ's denial of asylum because the petitioner failed to establish a nexus, a connection, as required by law between any past or future fear of harm and one of the illicit protected grounds in the INA. Is it your position that I can find that nexus in pages 89, 90, and 92 of the record? Is that your position? Your Honor, I want to be – and I see my time's expired. May I answer? Yes. I'll try to answer this question. Judge Zuhari, I think that we're focusing on two different nexuses here. What the immigration judge was focusing on and what the BIA was focusing on was not this political opinion persecution claim, but on the violence that occurred in these bus robberies. Well, that was also a political persecution claim, but it failed and you're not trying to overturn that piece of it independently. That's exactly right, Your Honor. I'm focusing on the evidence that was in the I-589, but that was not explored. And I think a remand is appropriate so that that can be sorted out at the administrative level as this Court has done in other cases that we cite in our brief. Let me ask you a final question. Your client was represented by counsel at this hearing and before the IJ? That's correct, Your Honor. So there was representation and that lawyer could have presented any type of evidence that he thought would be of assistance to his client. Your Honor. There's nothing in the record that showed that the person went to the wrong law school or was incompetent. I'm not sure if she went to Bullitt, Your Honor, but I think that she, of course, could have presented any evidence that she wanted to present. But as this Court made clear in Shofara, the fact that the petitioner is represented by counsel does not take away the immigration judge's duty by regulation and by this Court's case law to fully develop the record and ask questions that could undermine its validity. Well, let me just ask you this then. What about Dent, which is post-the Hara, offered by Judge Kleinfeld, that specifically held that Sofara is restricted to where there is no lawyer involved? Your Honor, in Shofara there was a lawyer involved, as you yourself pointed out in your dissent in that case. The petitioner had been represented by counsel. My well-written dissent. Very well-written, of course. Well, I don't understand the relevance at all of that whole strain of argument here. I mean, your contention, what had to be developed? Your contention is that nothing had to be developed, that it was in the record because it was in the application and signed under penalty of perjury, and that it was therefore adequate of itself. So what had to be developed? My point, Your Honor, and I appreciate the opportunity to clarify, is that if the immigration judge was going to rely on that as her basis for finding the petitioner ineligible for asylum. Rely on what? What's the that? Then she needed to explore that evidence. What's the that? Rely on that. What's the that? If she was going to rely on the fact, if she was going to say there was no nexus without exploring the evidence that was before her in the I-589, she had to ask questions about it. I mean the answer is she couldn't do that. I mean, she has to take into account whatever evidence is before her. So I don't understand the part about exploring anything. I mean, perhaps maybe she could have explored the waiver question. Right. She could have asked the petitioner whether he was pursuing a claim based on anything other than the incidents on the bus, and she didn't do that. But it's largely a peripheral point, as I understand, of the way things are set up in this case. Your Honor, it's absolutely unnecessary to reach that question to remand the case to the administrative body. Thank you very much. We'll give you a minute in rebuttal. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, my name is Rob Stulzer on behalf of the Attorney General. Your Honors, there was no due process violation in this case. Petitioner had a full and fair opportunity to present his claims. He was represented by counsel. He had the assistance of an interpreter and never complained about it. He did, and he presented it. And part of his presentation was the application. And then the IJ ignored that evidence entirely. And then the BIA said he'd waived it when, in fact, the – so it seems to me that's your key question. Did he waive it? Well, let's – let me ask you that. If he didn't waive it, is there a problem? If he did not waive his claim, I don't believe there is, Your Honor. And the reason for that is because his testimony was so crystal clear that he did not have a political opinion and that his only interaction with the guerrillas was the three robberies. In other words, Your Honor – Well, but that's saying he waived it. But I'm asking if he didn't waive it. If he didn't waive it. I mean, you're – the fact that his only interactions were through the robberies would be to say that this other thing didn't happen. But if he didn't waive it, then what? I suppose, Your Honor, we would have to say that then he perhaps testified with that credibility. His testimony was – He did what? I'm sorry? If he did not waive this extra claim, then we would have to say he was lying when he said that he didn't have political opinion or political involvement. Well, okay. And I suppose that the IJ or the BIA could so conclude on remand, but they did nothing with it. They didn't mention it. They didn't deal with it. They didn't do anything with it. Indeed. So you're saying that if – Counsel, the answer to that is the real question here. Your opponent has said that the IJ's failure to mention the alleged forced village meetings in her decision is fatal to his proceeding on appeal, and that remand is required. Now, let's assume for a moment we're allowed to take into account not only his testimony, but his written application, which is part of the record in this case. Assuming we can consider all of that, where does that meet us? Do we affirm because there cannot be another decision that meets the standard of proof, that is, that compels a contrary result? Or do we remand because of the failure to mention? We're all speculating on what role that may or may not have played in her decision because there was no testimony. But it is in the record. And so let's assume for a moment we consider written and oral. Where does that meet us? Yes, Your Honor. To the extent that it would matter, the BIA cured the problem when it referenced the evidence. Right? But a cure – I didn't get your answer. I'm sorry. You're not speaking loudly enough, Counsel. I apologize, Your Honor. I said if it would make a difference at the IJ level, the Board cured it when it referenced  Right? To comport with due process – But it references – not on the merits. It references by saying it was waived. So therefore, everything has to turn on the question of whether it was waived. Isn't that right? Indeed. Okay. So let's talk about that. Indeed. And the Board – the Board stated following the IJ that he waived it or abandoned it in the term they used because of his testimony that he was not politically involved and had only had the three interactions with the guerrillas. They can't both be true, right? He either had only three interactions with guerrillas as he testified – Well, he didn't say that. When did he say that? On page – on page 46 of the record, he said he was not politically involved. On page 47, I believe, he stated that when he was in the Civil Patrol, he hadn't had interactions with them. He would hear them passing at night, he said. Well, that's right. And the IJ, as one of the immigration judge's findings of fact, was that he never came face-to-face with the guerrillas. With regard to his Civil Patrol. That's right. That's different from this whole separate thing about there were meetings and we had to go to the meetings and I didn't go and they threatened me and so on. I mean, that's a whole different set of events. It is. So it couldn't be the waiver. That couldn't be the waiver. Well, he didn't testify to them. He had a completely open – I only testified to it, but that's why I began by saying, is it in the record? I mean, do you disagree with the basic premise that something that is in an application, a set of facts, that is not testified to is still part of the evidence before the IJ? Is that right or wrong? I believe that's correct, Your Honor. Okay. So the fact that he didn't testify to it by itself can't be the answer. I disagree to the extent his testimony is inconsistent with the written – All right. But the part that you – that's why I want to go through it piece by piece. The part that you just talked about is not inconsistent. So what is inconsistent? Okay. The part that is inconsistent is when he asked, was that your only confrontation with the guerrillas when he was testifying about the three robberies? And he said, yes, that was his only confrontation with the guerrillas. I thought he said that they – what was the exact question? I can look it up, Your Honor. In the record at 50, Your Honor, he was asked, and in the course of your patrols and the civil patrols, did you ever encounter any guerrillas during that time? And he answered, they would always pass close by us. Right. And that was the extent – But that's a different – that's a completely different point. Did he ever encounter them at that time? No, he didn't. What does that have to do with the meetings? If – it was my understanding that the meetings were taking place at the same time, Your Honor. Well, at the time, meaning when he was – When he was in the civil patrols. In context, it was when you were walking around as a civil patrol. He said no. Oh, I see what you're saying, Your Honor. To the extent that these meetings occurred, because he didn't testify to them – I mean, it would be very difficult for the IJ to say, you haven't testified about this at all, let me make your case for you. I mean, it's not the immigration judge's job to be his advocate any more than the immigration judge can advocate for Department of Homeland Security. But the problem is the government should have said something, right? The government should have said, you said in your – it's the best I can figure out, if we say that this is evidence. Then the government should have regarded it as evidence and should have cross-examined him on it, but it didn't. Well, it wasn't – yeah, exactly, because it's not Department of Homeland Security's burden to bring any evidence or even reference that evidence at all. It doesn't have to bring – that it stands the way it was submitted. Then there's no – because it was submitted in writing and it's there. Sure. And if they don't question it, then it stands. Then it stands, and at the board level, then they look at it and said, as they concluded, this doesn't satisfy your burden to demonstrate – But they didn't do that. That's the whole problem here. Nobody ever did that. The IJ didn't do it and the BIA didn't do it. I believe on AR3 of the board order, it said, we affirm the IJ's denial of asylum on the ground that respondent failed to establish a nexus. Right. And then with regard to this, they said that he waived it. They said, yeah, we note that this – Right, so they didn't – never determined that it was inadequate on the merits. They said it was waived, and it wasn't. I mean, that's what I – that's – you need to demonstrate that it was waived or we need to send it back for somebody to deal with it. I guess my question, Your Honor, would be on what basis would – it's certainly there's substantial evidence in the record to support the immigration judges and the board's determination. We know that marked. So I guess on the due process side, we would have to say that this was a fundamentally unfair hearing in some manner. But again, Your Honor, he had a full opportunity to present his evidence. He was never prevented from saying anything. He was never prevented from bringing any evidence forward. He was represented by counsel at the time. Don't we have a great deal of law that says that the agency has to – cannot ignore evidence that's in the record? Yes, Your Honor. That's in the record, right? So it either is in the record and was ignored, or it's not in the record because it was waived. Those seem like the only two options. But, Your Honor, the board didn't ignore it. They specifically referred to it. Obviously, they were aware of it, and that is all they must show is that they're aware of the evidence. All right. And forgive me, Your Honor. If you don't want to undertake to demonstrate it was waived, then I suppose you don't have to. But that seems to me the only way you can prevail here. Only because, Your Honor, I don't know that the waiver actually matters. And tell me why that is? To the extent that he stated that he wasn't involved politically. He cannot make a claim on the basis of politics. I mean, he was point blank. He and his family were not politically involved. And that's at page 46 of the record. And his claim was a political claim. He said, I'm seeking asylum on the basis of politics. But, Your Honor, he said he wasn't politically involved. And that's the end of his claim. So, counsel, even if there was not an abandonment, does there not still need to be a showing of prejudice, that is, that the outcome would have been different, taking into account all the evidence, including the citations to pages 89, 90, and 92? Am I correct? Yes, you are correct, Your Honor. There would have to be a showing of prejudice, which would be very difficult to find in this case, simply because he never really testified that something bad happened to him. He was robbed. And that was bad. But he said he was threatened by the guerrillas. But this Court has said that threats alone aren't sufficient. They have to be severe threats, threats accompanied by other violence or deprivation or, in some other way, persecutory harm, which there just was no persecutory harm in this case. And, in fact, that's one of the alternate findings of the immigration judge, was that he also did not demonstrate that the harm rose to the level of. The Board, however, didn't go further on and affirm that portion. It simply affirmed the nexus portion of the immigration judge's holding. But certainly that's still hanging out there, that in order to prevail on a due process claim, he would have to demonstrate prejudice, which he can't in this case. Your Honor, as I see my time has expired, I urge you to. Let me ask one other question. One question. The petitioner has now been removed and is back in Guatemala, right? Yes, sir. Does that interfere with our jurisdiction? No, Your Honor. You retain jurisdiction over this case. Based upon what? Which case? I couldn't cite the case to you off the top of my head, Your Honor. Didn't the 1996 Act specifically provide that we retain jurisdiction? I believe so, Your Honor. It did. Counsel. The Aguilar case doesn't bother you at all? No, Your Honor. Okay. Thank you. Thank you very much. We'll give you one minute in rebuttal. Counsel, if I may, before you start, I have reviewed again, page 89. I'm looking for evidence that this person was targeted, which I think is a requirement for you to show. Targeted or singled out. And certainly at page 89, the alleged threats by guerrillas came to each and every one of the members of the community. And it was thereafter that he joined the Civil Patrol without incident for several years. Where's your evidence that this petitioner was targeted to satisfy the legal hurdles you need to get over? Your Honor, to be clear, the targeting case law arises in the context that the immigration judge actually addressed, which is the generalized fear of crime. If all you've got is a generalized fear of crime, you do have to show targeting. But here we have actual opposition and refusal to attend meetings for political views. And there's no indication under the DS case. My understanding of your position is that we don't have to decide that either, and we can't. That's exactly right, Your Honor. And I think to the extent that the issue of prejudice came up during my friend's argument, the fact that prejudice is not required to find the BIA erred and to remand on that basis. It is required if you go into a due process ground. But again, under this Court's case law, if you get to the prejudice element on a due process analysis, all you need to show is that there was the potential for the petitioner to prevail on the facts. And I'll submit to the Court that the evidence in the I-589 could have potentially supported eligibility for asylum. Our argument here is that we should remand to the IJ, to the BIA, to explain its reasoning, and to remand to the IJ for further fact-finding if necessary. What about the material that your opponent has been pointing to on page 46 of the administrative record, where he was asked, did you or any members of your family belong to any political parties in Guatemala? No. Well, that doesn't mean that he didn't have political opinion. The next one, though, is were you otherwise involved politically in Guatemala? No. We were not involved with politics. We were only patrolmen at night. Now, why isn't that a waiver of the notion that just overall that he had any, could have been discriminated against or persecuted on the basis of political opinion? Well, Your Honor, I think it's important to read both of those answers, questions and answers you just read, in context. They're talking about political parties. His lawyer had asked the judge to cross out the political parties section of the I-589. He doesn't need to be involved with politics to have a claim here. What he's saying is he was trying to avoid getting involved with politics because he disagreed with the views that the dominant guerrillas in his town were espousing and trying to get him to adopt. That's his claim, not that he was involved in a political party. I suppose he could have a political opinion even if he isn't involved with politics. That's exactly right, Your Honor. And he could have an ascribed political opinion even if he isn't involved with politics. That's exactly right. Because he doesn't have a political opinion. Right. He's not a political operative or anything along those lines, but he did actively disagree with the views of the guerrillas and opposed attending their meetings on that basis. That's what he said in his claim. And I'll note as an aside that that page that counsel is referring to is not one of the nine pages the BIA cited in its order concluding that there had been a waiver. So remand is appropriate for that reason as well. Okay. Thank you both very much for your arguments. The case of Maldonado-Diaz v. Holder is submitted.
judges: Zouhary, Wallace, Berzon